UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DAVID MULLSTEFF *et al.*, )<br>Defendants. ) | Case No. 1:24-cr-00330-BAH |

## DAVID MULLSTEFF MEMORANDUM IN SUPPORT OF SENTENCING

Mr. David Mullsteff ("David") is a 62-year old Husband of thirty years, a Father of two adult children, and a Grandfather of two grandchildren. As seen by his Letters of Support, David is a good and very hard working person who is loved by his family and friends, has built a successful small business where he employs approximately twenty full time employees, has a strong family and community support network, and has given back to his community on numerous occasions. David comes before this Court for Sentencing after pleading guilty on October 4, 2024 to Count One of the Information - 18 U.S.C. § 1752(a)(1) (Entering and remaining in a restricted building or grounds). This offense carries a maximum sentence of one year of imprisonment; a fine up to $100,000; and a term of supervised release of not more than one year. As part of the plea agreement, the parties also agreed that David would pay $500.00 restitution and a $25.00 special assessment. We ask this Court to impose a sentence of twelve (12) months probation, $500.00 restitution, a $25.00 special assessment.

## The Offense Conduct

On the morning of January 6, 2021, David and his co-defendants, Eric Oliver and Brandon Pettit, made a last minute trip to Washington, D.C. These friends and neighbors went to the "Stop the Steal" rally on the Ellipse and then walked from the Ellipse to the front

1

of the U.S. Capitol area. Unbeknownst to David and his co-defendants, there were individuals in the crowd who would turn violent. Around 3:00 PM, after much of the protests and violence in the front of the Capitol Building had already subsided and calmed down, David and the others walked around the West Side of the Capitol Building to see for themselves what was going on. David and the others came upon an open Senate Wing Door where others were walking inside and at approximately 3:21 PM they followed the others inside the Capitol Building Door. None of this was preplanned or part of a conspiracy by David, Pettit, or Oliver to overthrow the results of the election or cause any violence. There was no police presence outside of this door and they merely went inside to see what was going on when they shouldn't have.

Once inside the West Wing of the Capitol Building, David saw that Capitol Police Officers had formed a square and cordoned off the area, which prevented anyone from going further into the Capitol Building. Although there had been violence occurring in other portions of the Capitol and earlier in the day, there was no violence occurring at this time and location that David was aware of. While inside the Capitol Building, David spoke with the Capitol Police Officers protecting the Capitol Building, shook their hands, thanked them for their service, and fist bumped each of the police officers who were inside the Senate Wing Door. While inside the Capitol Building, David did not commit any violent acts, nor did he destroy, damage, or steal any property. David did, however, stop another individual from harassing a female Capitol Police Officer and encouraged several other individuals inside the building to keep moving towards the exit and leave the Capitol Building. At approximately 3:24 P.M. after spending less than three and a half minutes inside the Capitol

Building, approximately a minute of which included waiting behind a line of others to leave the Building, David left the Capitol Building through the same set of doors upon which he entered.  Shortly, thereafter, David, and his codefendants set off on their way back home.

## Cooperation with The Government

Shortly after this incident took place, the Federal Bureau of Investigation (FBI) contacted David regarding this matter.  On January 15, 2021, just nine days after the January 6th incidents, David voluntarily met with the FBI and gave his first interview in this matter where he described his and his codefendant's involvement in this matter and expressed his remorse.  About 4 ½ months later, on May 25, 2021, David proactively contacted the FBI on his own and had a second conversation with the FBI regarding the January 6th incidents. During this phone call, David offered his cooperation to the FBI, which the FBI Special Agent noted in his FBI 302 Report and said "was appreciated."  On February 21, 2022, about 13 months after the January 6th incidents, David sat down with the FBI for a third conversation/second formal interview and yet again David provided the Government with information regarding their investigation.  At no time, did David put up any hurdles or hinder the FBI's investigation of him or others.  Quite the opposite and as demonstrated throughout the FBI 302 Reports provided in discovery, David provided consistent information to the Government and was all the while remorseful for his actions, to the point that David even broke down in tears when discussing how his actions negatively impacted others. David has remained consistent in what happened on January 6th and cooperative with the Government.

Of the numerous January 6th Defendants that have been prosecuted by the Government, David

3

and his codefendants are the least culpable of all these Defendants and never should have even been charged. In addition to this being the sentiment of David's Counsel, the original prosecutor and case agent on the case must've felt the same as they did not originally prosecute or charge David or his codefendants for their involvement in the January 6th incidents. In those regards, Brandon Petitt's case was formally closed by the FBI. David's current Counsel has asked for any and all records regarding the charging decision and reopening of charges against David and co-defendant Oliver but to date has not been provided any of this information as it relates to these two individuals. The only information that was provided related to Brandon Petitt. Despite not having this information, which likely contains "Brady Material" or demonstrates other violations of his Constitutional Rights, David still chose to accept responsibility for his actions and move forward with this matter.

      The Government's original decision NOT to prosecute Mullsteff, Petitt, and Oliver should have remained intact as this is a prosecution that should not have even been brought as the charging of this case gives rise to a whole different meaning and level of the saying "Making a federal case out of it." For over two years, the defendants believed this matter was behind them, as they had been led to believe by the Government. No new evidence was developed in the reopening of this case, at least nothing provided in discovery, that warranted the Government reopening the case against these defendants. The only thing that changed in this matter was that President Trump won the New Hampshire Presidential Primary on January 23, 2024, which is the Nation's first Presidential Primary. Two weeks later on February 6, 2024, the Government decided to reassign the case to a new prosecutor and case agent to change course and pursue charges against the defendants in this case. David was not charged until June 3, 2024, almost two and a half years following his attendance at the Capitol Building and grounds on January 6, 2021 and only after President Trump

looked like he may win the Republican Nomination for President.

Throughout this ordeal, David has been remorseful and cooperative as is summarized in the Pre-Sentence Investigation Report, where he states:

*"I deeply regret entering the Upper West Terrace and into the Senate Wing Door of the US Capitol Building in January 6, 2021. I should not have entered the Capitol to see what was taking place that day. Although there was no fighting or rioting in the area where I entered the Capitol and the horrible conduct that occurred at the Capitol that day has subsided over and hour earlier, I should have known better. The 3 minutes that I was in the Capitol, during which time I fist-bumped and thanked as many of the Capitol Police as possible for their service. Additionally, I stopped another individual from harassing a female Capitol Police Officer, when I told them to leave her alone, she is just doing her job. At which time that individual walked away. My actions on January 6th have changed my life and the lives of many others forever. Although I did not personally damage any part of the Capital and I did not engage in any conflict with the Capital Police, I am now aware that my actions contributed to a very bad situation for which I am deeply sorry! I attempted to make amends for my actions and fully cooperated with the FBI giving the Special Agent a statement on January 15, 2021, offering my assistance again on May 25, 2021, and then again on February 17, 2022. I was originally told that after hearing my statement we most likely would not be charged for our conduct. This was a huge sigh of relief at that first meeting with the FBI. 2 years went by and we found out in June of this past year that a new Special Agent and new Prosecutor were assigned to our cases and that I along with Mr. Oliver and Pettit were being charged. I am deeply sorry for my actions and I have taken full*


*responsibility for my actions from the first meeting with the FBI. I also assure the court I will never be involved in any protests, rallies, movements, groups or any activity that may reflect badly to the court or to my reputation."* See ECF 69 at 7-8

Despite this prosecution being closed and on hold for over two years, the Government now asks the Court to impose a "variance" of the Sentencing Guidelines, which call for probation. The experienced prosecutor and case agent who originally decided against bringing this case were correct in not charging this matter. Now that the case has been charged, the Sentencing Guidelines are correct calling for a sentence of Probation. Further, the Probation Department is correct in recommending Probation for David. Yet, the Prosecution is now attempting to unjustly and inappropriately ask the Court to go above and beyond the Sentencing Guidelines and impose a harsher sentence than necessary via a variance for a first time offender who by all accounts has cooperated with the Government, lives a law abiding life other than this incident, is an upstanding member of his community, and has been remorseful for his actions. This case warrants a sentence of probation at best. ECF #74 at 9

Additionally, and despite President Elect Trump's numerous statements that the January 6th Defendants will be pardoned, David has not requested a continuance in this matter pending the outcome of President Trump being sworn into office or official pardoning January 6th Defendants. David has fully accepted responsibility for his actions and wishes that he and everyone involved in January 6th protests can move forward.

### Sentencing Factors Heavily Weigh in Favor of a Probationary Sentence

The Sentencing Factors all weigh heavily in favor of David being sentenced to probation. 18 U.S.C. §3553 sets forth the various factors that the Court should consider

when sentencing a defendant. The court shall impose a sentence **"sufficient, but not greater than necessary"** to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D)(Emphasis added)

> 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) The need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
>
> (3) The kinds of sentences available;
>
> (4) The sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;
>
> (5) Any relevant "policy statements" promulgated by the Commission;
>
> (6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) The need to provide restitution to any victims of the offense.

The Sentencing Factors all weigh heavily in favor of a Sentence of Probation. First, David played a very minor role in January 6th and had President Trump not won the New Hampshire Primary, probably never would've been charged. Additionally, this is a loving Family Man, who has provided 5-10% of his company's profits to charity each year. Second, David is 62 and has led a law abiding life to this point in his life. He's learned his lesson. Third, as called upon by the

Sentencing Guidelines and as the Probation Department recommends, David should receive a sentence of probation. Fourth, although house arrest or incarceration are technically available with the departure or variance, the Sentencing Guidelines call for Probation. The fact that the Government asked for a variance is not just or proper in this case at hand. Fifth, there is not going to be recidivism or a repeat performance of January 6, 2021 as seen by the actions of January 6, 2025 by this defendant. Sixth, a sentence other than probation would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing for January 6th Defendants as most of them have received probation when only charged with "the four misdemeanors" in this District as laid out in Co-Defendant Oliver's Sentencing Memorandum. ECF 11-16. And Finally, Seventh, restitution of $500.00 was agreed upon by the parties and not an issue.

## Conclusion

In short, a sentence of a term of twelve (12) months probation, $500.00 of restitution, and a $25.00 special assessment, is sufficient, but not greater than necessary, to achieve an appropriate sentence and comply with the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) and should be imposed in the case at hand.

Dated: January 14, 2025               Respectfully submitted,

                                      By: /s/ Robert J. Sander
                                      ROBERT J. SANDER
                                      D.C. Bar #90013985
                                      The Sander Group, PLLC
                                      6618 Saint Mark's Court
                                      Alexandria, VA 22306
                                      Tel: (703) 459-0442

                                      *Counsel for David Mullsteff*

**CERTIFICATE OF SERVICE**

I certify that on January 14, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends a notification of filing (NEF) to all counsel of record, including the Assigned Assistant United States Attorney.

/s/ Robert J. Sander

Robert J. Sander